JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
JAMES C. LUH (N.Y. Bar)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington DC 20530
Tel: (202) 514-4938
E-mail: James.Luh@usdoj.gov
Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROCK THE VOTE, et al. | Case No. 20-cv-6021-WHO |
| Plaintiffs | **NOTICE OF MOTION AND MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| DONALD J. TRUMP, et al. | Hearing: October 21, 2020, 2 p.m. |
| Defendants | Hon. William H. Orrick |

Notice of Motion and Motion to Dismiss and Opposition to Motion for Preliminary Injunction
Case No. 20-cv-6021-WHO

# TABLE OF CONTENTS

NOTICE OF MOTION..................................................................................................... 1

MOTION TO DISMISS.................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES.................................................. 1

PRELIMINARY STATEMENT...................................................................................... 1

STATEMENT OF THE ISSUES .................................................................................... 2

BACKGROUND ............................................................................................................ 3

    I.       The President's Executive Order No. 13,925 ........................................ 3

    II.      The plaintiffs' complaint and motion for preliminary injunction ......................... 6

    III.    Applicable legal standards ...................................................................... 6

    IV.    Because the plaintiffs cannot meet the jurisdictional requirements of standing and ripeness, preliminary relief should be denied, and this action should be dismissed. ..................................................................................................................... 7

        A.       The jurisdictional requirements of standing and ripeness........................... 7

        B.       The plaintiffs cannot establish standing because the Executive Order does not regulate the plaintiffs or the online platforms they use. ...................... 8

        C.       For similar reasons, the plaintiffs' claims fail to satisfy the jurisdictional requirement of ripeness............................................................................. 14

        D.       The reasons that undermine the plaintiffs' claims of immediate injury also undermine their claims of irreparable harm............................................. 15

        E.       The separation of powers bars injunctive relief against the President...... 16

    V.      The complaint also fails to state a claim for relief, which further undermines the plaintiffs' likelihood of success, and the complaint should be dismissed............ 16

        A.       Because the Executive Order does not regulate speech or any other private activity, the complaint does not state a valid claim under the First Amendment............................................................................................. 16

        B.       The separation of powers bars injunctive relief against the President...... 18

        C.       Neither the Court's general equitable powers nor the All Writs Act provides any basis for a claim.................................................................. 18

    VI.    The other factors in the preliminary injunction analysis weigh against relief...... 19

    VII.   There is no basis for nationwide relief in this action. ........................................... 19

CONCLUSION............................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*Alaska Right to Life Pol. Action Comm. v. Feldman,*
504 F.3d 840 (9th Cir. 2007) ................................................................ 9, 15

*Allen v. Wright,*
468 U.S. 737 (1984) .................................................................................... 7

*Am. Diabetes Ass'n v. U.S. Dep't of the Army,*
938 F.3d 1147 (9th Cir. 2019) .................................................................. 13

*Armstrong v. Exceptional Child Care Ctr., Inc.,*
135 S. Ct. 1378 (2015) .............................................................................. 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................ 6, 7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................... 7

*Blair v. Bethel Sch. Dist.,*
608 F.3d 540 (9th Cir. 2010) .............................................................. 17, 18

*Califano v. Yamasaki,*
442 U.S. 682 (1979) .................................................................................. 19

*Caribbean Marine Servs. Co. v. Baldrige,*
844 F.2d 668 (9th Cir. 1988) .................................................................... 15

*City & County of San Francisco v. Barr,*
965 F.3d 753 (9th Cir. 2020) .............................................................. 19, 20

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) .......................................................................... 8, 9, 13

*Cole v. Oroville Union High Sch. Dist.,*
228 F.3d 1092 (9th Cir. 2000) .................................................................. 12

*Coons v. Lew,*
762 F.3d 891 (9th Cir. 2014) .................................................................... 13

*Dep't of Homeland Sec. v. New York,*
140 S. Ct. 599 (2020) (mem.) ................................................................... 19

*Doe v. INS,*
120 F.3d 200 (9th Cir. 1997) .................................................................... 18

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
521 F.3d 1157 (9th Cir. 2008) (en banc) ................................................... 3

*Franklin v. Massachusetts,*
505 U.S. 788 (1992) .................................................................................. 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................................................. 8

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) (en banc) .............................................................. 15

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ......................................................................................... 19

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*,
    816 F.3d 1241 (9th Cir. 2016) ............................................................................ 14

*INS v. Pangilinan*,
    486 U.S. 875 (1988) .............................................................................................. 18

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................................................ 7

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) .............................................................................................. 12

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir. 1980) ............................................................................ 15

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ............................................................................ 12

*Laird v. Tatum*,
    408 U.S. 1 (1972) ................................................................................................... 9

*Lance v. Coffman*,
    549 U.S. 437 (2007) (per curiam) ..................................................................... 10

*Levine v. Vilsack*,
    587 F.3d 986 (9th Cir. 2009) .............................................................................. 11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555, 562 (1992) ................................................................................ 9, 10

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) .......................................................................................... 8, 14

*Mississippi v. Johnson*,
    71 U.S. (4 Wall.) 475 (1867) .............................................................................. 16

*Mulligan v. Nichols*,
    835 F.3d 983 (9th Cir. 2016) .............................................................................. 17

*Munaf v. Geren*,
    553 U.S. 674 (2008) ................................................................................................ 7

*Nat'l Park Hosp. Ass'n v Dep't of the Interior*,
    538 U.S. 803 (2003) .............................................................................................. 14

*Nken v. Holder*,
    556 U.S. 418 (2009)............................................................................................ 19

*O'Keefe v. Van Boening*,
    82 F.3d 322 (9th Cir. 1996)................................................................................. 9

*Ohio Forestry Ass'n v. Sierra Club*,
    523 U.S. 726 (1998)............................................................................................ 14

*Rubin v. City of Santa Monica*,
    308 F.3d 1008 (9th Cir. 2002)............................................................................ 10

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974)............................................................................................ 12

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    140 S. Ct. 2183 (2020)....................................................................................... 19

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
    549 U.S. 422 (2007)............................................................................................ 7

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)....................................................................................... 10

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).............................................................................................. 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................... 6, 11

*Terenkian v. Republic of Iraq*,
    694 F.3d 1122 (9th Cir. 2012)............................................................................. 7

*Texas v. United States*,
    523 U.S. 296 (1998)............................................................................................ 8

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) (en banc) ......................................................... 8, 14

*Unsworth v. Musk*,
    Case No. 19-mc-80224-JSC, 2019 WL 5550060 (N.D. Cal. Oct. 28, 2019)........ 11

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
    135 S. Ct. 2239 (2015)....................................................................................... 18

*Warth v. Seldin*,
    422 U.S. 490 (1975)......................................................................................... 7, 12

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008).............................................................................................. 6, 19

**FEDERAL STATUTES**

    All Writs Act, 28 U.S.C. § 1651 ....................................................................... 18

Communications Decency Act, 47 U.S.C. § 230(c) ........................................... 3, 4

Federal Trade Commission Act, 15 U.S.C. § 45 ................................................. 5

**EXECUTIVE ORDERS**

Exec. Order No. 13,925, 85 Fed. Reg. 34,079 (May 28, 2020)................................. passim

**FEDERAL RULES**

Fed. R. Civ. P. 12(b) ....................................................................... 1

**OTHER AUTHORITIES**

Donald J. Trump (@realDonaldTrump), Twitter (June 23, 2020, 8:45 AM).................... 11

Donald J. Trump (@realDonaldTrump), Twitter (Sept. 3, 2020 10:32 AM)................... 11

Donald J. Trump (@realDonaldTrump), Twitter (Sept. 17, 2020 7:36 AM)................... 11

Donald J. Trump (@realDonaldTrump), Twitter (Sept. 17, 2020 7:45 AM)................... 11

Donald J. Trump (@realDonaldTrump), Twitter (Sept. 17, 2020 2:12 PM)................... 11

Donald J. Trump (@realDonaldTrump), Twitter (Sept. 17, 2020 8:20 PM)................... 11

Ending Support for Internet Censorship Act, S. 1914, 116th Cong. (2019) ...................... 3

Limiting Section 230 Immunity to Good Samaritans Act, S. 3983, 116th Cong. (2020)... 3

Petition for Rulemaking of the National Telecommunications and Information
      Administration, File No. RM-11862 (FCC July 27, 2020)................................. 4

Platform Accountability and Consumer Transparency Act, S. 4066, 116th Cong. (2020) . 3

Stopping Big Tech's Censorship Act, S. 4062, 116th Cong. (2020)................................. 3

**NOTICE OF MOTION**

Please take notice that on October 21, 2020, at 2 p.m., defendants Donald J. Trump, President; William Barr, Attorney General; Wilbur Ross, Secretary of Commerce; Doug Kinkoph, Associate Administrator, Office of Telecommunications and Information Applications; and Russell Vought, Director, Office of Management and Budget, will move the Court to dismiss this action.

**MOTION TO DISMISS**

The defendants move to dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

The plaintiffs' complaint and motion for preliminary injunction fundamentally misunderstand the nature and effect of the President's May 2020 Executive Order on Preventing Online Censorship, Exec. Order No. 13,925, 85 Fed. Reg. 34,079 (May 28, 2020).[1] The President's Executive Order does not itself impose any penalty, restriction, or requirement on online platforms such as Twitter, Facebook, Instagram, or YouTube. And it certainly does not have any such effect on the plaintiff organizations. Rather, the Executive Order merely directs certain federal agencies to *propose* certain policymaking actions, *study* certain policy questions, and *report* information relevant to those questions.

Because the Executive Order does not directly regulate the plaintiffs or any other private entity, it does not injure any legally protected interest of the plaintiffs, and the plaintiffs cannot meet the jurisdictional requirements of standing and ripeness.

For the same reasons, the plaintiffs' complaint fails to state a claim for relief under the First Amendment. The Executive Order does not restrict or regulate the speech of the plaintiffs or

---

[1] The Executive Order is attached to the plaintiffs' complaint, *see* Compl. for Declaratory and Injunctive Relief Ex. A, ECF No. 1, and is also available at https://www.govinfo.gov/content/pkg/FR-2020-06-02/pdf/2020-12030.pdf.

anyone else—to the contrary, the Executive Order seeks to "foster and protect diverse viewpoints in today's digital communications environment where all Americans can and should have a voice," *id.* § 1—nor does it affect online platforms in a way that could amount to unlawful retaliation.

For similar reasons, the plaintiffs cannot justify the extraordinary remedy of enjoining an Executive Order, and doing so would raise a host of separation of powers concerns. As an initial matter, because the Executive Order does not regulate the plaintiffs in any way, the plaintiffs cannot show that they face any threat of irreparable harm. And because the plaintiffs do not meet the requirements of standing and ripeness and do not state a valid claim for relief, they cannot demonstrate a likelihood of success on the merits. Even if the plaintiffs could make such showings, the public interest and the balance of equities also weigh against a preliminary injunction, because enjoining an Executive Order would unduly interfere with the President's management of the Executive Branch.

The Court should deny the plaintiffs' motion for preliminary injunction and should dismiss this action.

## STATEMENT OF THE ISSUES

(1)     Whether the allegations of the complaint are sufficient to meet the jurisdictional requirements of standing and ripeness given that the challenged Executive Order does not impose any restriction, requirement, or penalty on either the plaintiffs or the online platforms that the plaintiffs claim to use.

(2)     Whether the allegations of the complaint are sufficient to state a claim for relief under the First Amendment given that the challenged Executive Order does not impose any restriction, requirement, or penalty on either the plaintiffs or the online platforms that the plaintiffs claim to use.

(3)     Whether the plaintiffs have made the clear showing needed to justify the extraordinary relief of a preliminary injunction.

# BACKGROUND

## I.    The President's Executive Order No. 13,925

The plaintiffs challenge the President's May 28, 2020, Executive Order on Preventing Online Censorship, Exec. Order No. 13,925, 85 Fed. Reg. 34,079 (May 28, 2020). The Executive Order reflects the President's view that "[t]he growth of online platforms in recent years raises important questions about applying the ideals of the First Amendment to modern communications technology." *Id.* § 1. The Order expresses the President's concern that "[o]nline platforms are engaging in selective censorship that is harming our national discourse" and that "[w]e must seek transparency and accountability from online platforms, and encourage standards and tools to protect and preserve the integrity and openness of American discourse and freedom of expression." *Id.* § 1. The Executive Order directs certain Executive Branch agencies and officials to assess these concerns and identify potential solutions to any problems they identify.[2]

Section 2 of the Executive Order states policy goals and urges further clarification of the application of section 230(c) of the Communications Decency Act of 1996, Pub. L. No. 104-104, § 230(c), 110 Stat. 56, 138–39 (codified at 47 U.S.C. § 230(c)). That statute provides, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It also protects a "provider or user of an interactive computer service" from liability for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." *Id*. § 230(c)(2); *see also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162–64 (9th Cir. 2008) (en banc).

Section 2(a) of the Executive Order states, "It is the policy of the United States that the scope of [the section 230(c)] immunity should be clarified: the immunity should not extend

---

[2] The Executive Order is not the first effort to promote neutrality and transparency in the moderation of content by online platforms. A number of legislative proposals have sought to address similar issues. *See, e.g.*, Ending Support for Internet Censorship Act, S. 1914, 116th Cong. (2019); Limiting Section 230 Immunity to Good Samaritans Act, S. 3983, 116th Cong. (2020); Stopping Big Tech's Censorship Act, S. 4062, 116th Cong. (2020); Platform Accountability and Consumer Transparency Act, S. 4066, 116th Cong. (2020).

1  beyond its text and purpose to provide protection for those who purport to provide users a forum

2  for free and open speech, but in reality use their power over a vital means of communication to

3  engage in deceptive or pretextual actions stifling free and open debate by censoring certain

4  viewpoints." Exec. Order No. 13,925, § 2(a). Section 2(a) further states that "[i]t is the policy of

5  the United States to ensure that, to the maximum extent permissible under the law, this provision

6  is not distorted to provide liability protection for online platforms that—far from acting in 'good

7  faith' to remove objectionable content—instead engage in deceptive or pretextual actions (often

8  contrary to their stated terms of service) to stifle viewpoints with which they disagree." *Id.*

9          To advance these policy aspirations, the Executive Order directs various Executive

10  Branch officials to take preliminary steps aimed at clarifying the scope of section 230. The

11  Executive Order directs the Secretary of Commerce, "in consultation with the Attorney General,

12  and acting through the National Telecommunications and Information Administration (NTIA),"

13  to "file a petition for rulemaking with the Federal Communications Commission (FCC)

14  requesting that the FCC expeditiously propose regulations to clarify" the operation of section

15  230, including clarifying when "an action restricting access to or availability of material is not

16  'taken in good faith' within the meaning of" section 230(c)(2)(A), "particularly whether actions

17  can be 'taken in good faith' if they are . . . deceptive, pretextual, or inconsistent with a provider's

18  terms of service." Exec. Order No. 13,925, § 2(b). The NTIA accordingly filed a rulemaking

19  petition with the FCC on July 27, 2020. *See* Petition for Rulemaking of the National

20  Telecommunications and Information Administration, File No. RM-11862 (FCC July 27, 2020),

21  https://ecfsapi.fcc.gov/file/10803289876764/ntia_petition_for_rulemaking_7.27.20.pdf. The

22  FCC accepted public comments on the petition but has not yet taken action on the petition. The

23  Executive Order does not require the FCC to take any particular action in response to the

24  petition.

25          The Executive Order also calls for agencies to take other steps to study, report on, and

26  propose responses to the problem of political bias in the removal or editing of user content by

27  online platforms. Section 3 directs agencies to report to the Office of Management and Budget

28  on the advertising and marketing funds they pay to online platforms and directs the Department

of Justice to assess whether any online platforms identified in the reports "are problematic vehicles for government speech due to viewpoint discrimination, deception to consumers, or other bad practices." Exec. Order No. 13,925, § 3.

Section 4 notes that "large online platforms, such as Twitter and Facebook," are "providing an important forum to the public for others to engage in free expression and debate." It states that a "Tech Bias Reporting tool" created by the White House collected more than 16,000 complaints from the public "of online platforms censoring or otherwise taking action against users based on their political viewpoints," and notes that the White House will submit those complaints to the Department of Justice and the Federal Trade Commission. *Id.* § 4. Section 4(c) directs the FTC to "consider taking action, as appropriate and consistent with applicable law, to prohibit unfair or deceptive acts or practices in or affecting commerce" under section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45, possibly including "practices by entities covered by section 230 that restrict speech in ways that do not align with those entities' public representations about those practices." Exec. Order No. 13,925, § 4(c).

Section 5 directs the Attorney General to establish a working group to explore "potential enforcement of State statutes that prohibit online platforms from engaging in unfair or deceptive acts or practices" and develop "model legislation" for "consideration" by State legislatures. The working group is to "invite State Attorneys General for discussion and consultation, as appropriate and consistent with applicable law." *Id.* § 5. Section 6 directs the Attorney General to "develop a proposal for Federal legislation that would be useful to promote the policy objectives" of the Executive Order. *Id.* § 6.

The Executive Order specifies that it "shall be implemented consistent with applicable law" and "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States." *Id.* § 8(b)–(c).

Thus, the Executive Order directs Executive Branch agencies to make certain policy proposals, study certain policy questions, and report certain information relevant to those policy questions. But it does not impose any restriction, requirement, or penalty on online platforms or other private entities, nor does it direct Executive Branch agencies to take any such action.

1

## II.     The plaintiffs' complaint and motion for preliminary injunction

2

3

Plaintiffs Rock the Vote, Voto Latino, Common Cause, Free Press, and Maplight filed this

action on August 27, 2020. Each of the plaintiffs is an organization that seeks to promote voting

4

and civic engagement. *See* Compl. ¶¶ 2, 24–34. The plaintiffs allege that they use online

5

platforms in their work, though none of the plaintiffs is itself an online platform. *See* Compl.

6

¶¶ 2, 24–34. The plaintiffs assert that the Executive Order violates the First Amendment by

7

unlawfully restricting speech by online platforms, retaliating and threatening retaliation against

8

online platforms because of their speech, and impairing the rights of audiences to receive speech

9

from online platforms. Compl. ¶¶ 143–186. The suit names as defendants the President, the

10

Attorney General, the Secretary of Commerce, the Associate Administrator of the Office of

11

Telecommunications and Information Applications, National Telecommunications and

12

Information Administration, and the Director of the Office of Management and Budget, and

13

seeks declaratory and injunctive relief against the Executive Order.

14

On September 4, 2020, the plaintiffs filed a motion for preliminary injunction. Pls.'

15

Notice of Mot. and Mot. for Prelim. Inj. (Pls.' Mot.), ECF No. 19.

16

## III.    Applicable legal standards

17

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v.*

18

*NRDC, Inc.*, 555 U.S. 7, 24 (2008) "A plaintiff seeking a preliminary injunction must establish

19

[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in

20

the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that

21

an injunction is in the public interest." *Id.* at 20.

22

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

23

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

24

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court

25

considers "the complaint in its entirety, as well as . . . documents incorporated into the complaint

26

by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor*

27

*Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court accepts the factual allegations as true,

28

but "bare assertions" and "conclusory" allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 678, 681. The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. This requires factual allegations "plausibly suggesting," and "not merely consistent with," a valid claim for relief. *Id.* at 557. The court applies this standard both when analyzing whether the complaint alleges facts sufficient to establish subject matter jurisdiction and when analyzing whether the complaint states a valid claim for relief. *See, e.g.*, *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

## IV. Because the plaintiffs cannot meet the jurisdictional requirements of standing and ripeness, preliminary relief should be denied, and this action should be dismissed.

### A. The jurisdictional requirements of standing and ripeness

A plaintiff seeking to invoke the jurisdiction of a federal court bears the burden of establishing that the court's exercise of jurisdiction is within the bounds of the Constitution and is authorized by statute. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). A court must resolve all issues of subject matter jurisdiction before it proceeds to the merits of the plaintiff's claims. *See, e.g.*, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Moreover, a "difficult question of jurisdiction" makes it more difficult for the plaintiffs to show a likelihood of success on the merits and therefore weighs against preliminary relief. *Munaf v. Geren*, 553 U.S. 674, 690 (2008).

The jurisdictional requirement of "standing" is rooted in the constitutional separation of powers. It prevents courts from taking action to address matters better suited to legislative or executive action. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). A plaintiff in federal court must show "such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). Standing entails three elements:

> [A] plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The Supreme Court has instructed that the requirement of standing is "especially rigorous" when a plaintiff asks the court to determine "whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

A plaintiff in federal court also must show that its claim is ripe. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). Ripeness incorporates both a constitutional requirement and a prudential requirement. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The constitutional ripeness requirement overlaps with the "injury-in-fact" requirement of standing. *See id.*; *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007) (recognizing that in some cases, "standing and ripeness boil down to the same question"). The prudential ripeness test calls for a court to consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Thomas*, 220 F.3d at 1141.

**B.      The plaintiffs cannot establish standing because the Executive Order does not regulate the plaintiffs or the online platforms they use.**

Because the Executive Order does not directly regulate the plaintiffs, any online platform, or any other private entity, it does not injure any legally protected interest of the plaintiffs, and the plaintiffs cannot establish standing.

The plaintiffs argue that they meet the requirement of standing based on two theories: First, they assert that the Executive Order interferes with their "right to receive speech" from online platforms. Pls.' Mot. 12–13; *see also* Compl. ¶¶ 140–142. Second, they argue that the Executive Order has forced them to "divert resources . . . to combat misinformation on online

platforms" and has "frustrated" their efforts to accomplish their missions. *See* Pls.' Mot. 13; *see also* Compl. ¶¶ 101–139. Neither of these theories can support standing in this case.

The Executive Order does not impair any "right to receive speech." As discussed above, the Executive Order does not impose any restriction, requirement, or penalty on any of the plaintiff organizations or on any online platform. The Executive Order merely instructs federal agencies and officials to make certain policy proposals, study certain policy questions, and report certain information relevant to those policy questions "to foster clear ground rules promoting free and open debate on the internet." Exec. Order No. 13,925, § 1. The Executive Order does not curtail the ability of online platforms to speak or any person's ability to receive speech from online platforms.

The plaintiffs appear to suggest that although the Executive Order does not directly restrict speech, it nevertheless chills or deters speech by online platforms. *See, e.g.*, Compl. ¶ 8. But the Supreme Court held in *Laird v. Tatum*, 408 U.S. 1 (1972), that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* at 13–14; *accord Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). A supposed "chilling effect" can support standing only when the challenged Government action has some "regulatory, proscriptive, or compulsory" effect on the plaintiff. *Laird*, 408 U.S. at 11. Speculation that the Government "may at some future date" take further action "that would cause direct harm" to the plaintiff does not support standing. *Id.* at 13; *see also O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (citing *id.* at 11, 13).

Indeed, the plaintiffs' claims of injury in this case are even weaker than the claims that the Supreme Court rejected in *Laird.* The *Laird* plaintiffs asserted that their own speech was chilled. The plaintiffs here, however, are arguing that the Executive Order chills the speech of third-party online platforms not before this Court. But a plaintiff cannot establish standing based on injuries to others; the plaintiff itself must be "among the injured." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)); *see also Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 851–52 (9th Cir. 2007)

1   (holding that a challenge to canons of judicial conduct was not ripe in part because the plaintiffs
2   were not judges and therefore were not themselves subject to the judicial code).

3          The plaintiffs argue that any action that might chill or deter online platforms from
4   engaging in speech necessarily amounts to an injury to the plaintiffs themselves because it
5   impairs their right to receive speech from online platforms. But to establish standing, a plaintiff
6   must show that he has been harmed "in a personal and individual way." *Spokeo, Inc. v. Robins*,
7   136 S. Ct. 1540, 1548 (2016). The plaintiffs do not allege that the Government has interfered
8   with any particular, identifiable communication that they sought to receive. Instead, they contend
9   more broadly that online platforms will engage in less speech because of the Executive Order,
10  and the marketplace of ideas will be poorer for it. That is not a personal harm to the plaintiffs;
11  rather, it is the kind of "generalized grievance[]" that cannot support standing—an abstract injury
12  that the plaintiffs "suffer[] in some indefinite way in common with people generally." *Lance v.*
13  *Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (quoting *DaimlerChrysler Corp. v. Cuno*, 547
14  U.S. 332, 344 (2006)). The Ninth Circuit rejected an essentially identical claim of injury in
15  *Rubin v. City of Santa Monica*, 308 F.3d 1008 (9th Cir. 2002). The plaintiff in *Rubin* sought to
16  challenge a State election law that governed the content of candidate statements in ballot
17  materials; he contended that the law impaired his "right to receive" candidate statements that did
18  not comply with the requirements. *Id.* at 1020. The Ninth Circuit held that this was "no more
19  than an abstract interest common to all members of the public" and could not support standing.
20  *Id.*

21         The plaintiffs' theory of standing also fails because the plaintiffs do not meet the
22  requirements of causation and redressability—they have not alleged facts plausibly suggesting
23  that online platforms have actually refrained from speech because of the Executive Order, or that
24  online platforms would engage in more speech if the Court were to rule for the plaintiffs. A
25  plaintiff that claims it will suffer injury because of other persons' responses to Government
26  action faces a higher bar to establish standing. *See Defs. of Wildlife*, 504 U.S. at 562 ("When . . .
27  a plaintiff 's asserted injury arises from the government's allegedly unlawful regulation . . . of
28  *someone else*, much more is needed. . . . [I]t becomes the burden of the plaintiff to adduce facts

1   showing that [the choices made by other persons] have been or will be made in such manner as

2   to produce causation and permit redressability of injury."). The allegations in the complaint do

3   not meet that bar, particularly since the Executive Order does not have any direct effect on online

4   platforms. *See Levine v. Vilsack*, 587 F.3d 986, 997 (9th Cir. 2009) (holding that the plaintiff

5   lacked standing because any benefit to the plaintiff from a favorable judgment would depend on

6   further policy action by the Secretary of Agriculture and responses to that policy action by

7   private parties).

8        Indeed, the complaint notes two occasions after the issuance of the Executive Order when

9   Twitter placed labels on tweets by the President in a way that signaled Twitter's disapproval of

10  the President's statements. *See* Compl. ¶¶ 79, 107, 116. And in addition to the instances

11  mentioned in the complaint, Twitter has placed disapproving labels on the President's tweets on

12  at least six other occasions after the Executive Order. *See* Donald J. Trump

13  (@realDonaldTrump), Twitter (June 23, 2020, 8:45 AM), https://twitter.com/realDonaldTrump

14  /status/1275409656488382465; Donald J. Trump (@realDonaldTrump), Twitter (Sept. 3, 2020

15  10:32 AM), https://twitter.com/realDonaldTrump/status/1301528522582786049; Donald J.

16  Trump (@realDonaldTrump), Twitter (Sept. 17, 2020 7:36 AM), https://twitter.com

17  /realDonaldTrump/status/1306557587375128576, Donald J. Trump (@realDonaldTrump),

18  Twitter (Sept. 17, 2020 7:45 AM), https://twitter.com/realDonaldTrump/status

19  /130655985368344576; Donald J. Trump (@realDonaldTrump), Twitter (Sept. 17, 2020 2:12

20  PM), https://twitter.com/realDonaldTrump/status/1306657377823993857; Donald J. Trump

21  (@realDonaldTrump), Twitter (Sept. 17, 2020 8:20 PM), https://twitter.com/realDonaldTrump

22  /status/1306749921173762049.[3] The plaintiffs do not plausibly allege facts that support an

23

24

25   ───────────────
     [3] The Court may consider these tweets and the labels applied by Twitter when considering
26   any aspect of the defendants' motion to dismiss. *See, e.g., Unsworth v. Musk*, Case No.
     19-mc-80224-JSC, 2019 WL 5550060, at *4 (N.D. Cal. Oct. 28, 2019) (taking judicial notice of
27   the existence of publicly available articles and tweets (citing *Von Saher v. Norton Simon Mus. of
     Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010))); *Tellabs, Inc. v. Makor Issues & Rights,
28   Ltd.*, 551 U.S. 308, 322 (2007) (noting that a court considering a motion to dismiss may consider
     "matters of which a court may take judicial notice").

inference that Twitter or another online platform has reduced its speech because of the Executive Order, or that it would increase its speech if the Executive Order were invalidated.

The plaintiffs also cannot bring any claim based on the First Amendment rights of online platforms. A plaintiff in federal court ordinarily may rely only on "his own legal rights and interests," *Warth*, 422 U.S. at 499. A narrow exception permits a plaintiff to assert the constitutional rights of third parties with whom it has a special relationship and who are impeded from bringing suit themselves. *See generally Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). But the plaintiffs do not have any special relationship with any online platform, and the plaintiffs have not shown that online platforms are hindered in protecting their own rights. Moreover, the third-party standing exception does not allow a plaintiff to bypass the minimum constitutional requirements of standing—the plaintiff still must show injury to itself, traceable to the challenged Government action and redressable by a favorable decision. *See id.* at 129 & n.2; *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1099 (9th Cir. 2000). As discussed above, the plaintiffs have not met any of those requirements here.

The plaintiffs' second theory of standing, that the Executive Order compels them to "divert resources . . . to combat misinformation on online platforms" and has "frustrated" their efforts to accomplish their missions, also does not support standing. An organization's interest or expertise in the subject matter of a lawsuit is not enough to support standing. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 226 (1974) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient . . . ." (quoting *Sierra Club*, 405 U.S. at 739)). The Ninth Circuit has held that an organization can sometimes establish standing when it shows "both a diversion of its resources and a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). But an organization "cannot manufacture the injury by . . . simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id.* (citation omitted) (citing *Fair*

1   *Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276–77 (D.C. Cir.

2   1994)). The Supreme Court has also held that an organization cannot establish standing based on

3   actions it takes "in response to a speculative threat." *Clapper*, 568 U.S. at 416. Actions that an

4   organization takes to avoid future harm can support standing only if the organization shows that

5   the harm is "certainly impending." *Id.* at 417.

6         Under these standards, the plaintiffs cannot establish standing. As discussed above, the

7   Executive Order does not impose any restriction, requirement, or penalty on online platforms or

8   anyone else. And the plaintiffs have not otherwise alleged facts plausibly suggesting that the

9   Executive Order has caused online platforms to reduce their speech. The Executive Order does

10  not harm the plaintiffs in any tangible way, and if the plaintiffs choose to step up their

11  longstanding efforts to "combat misinformation on [online] platforms," Pls.' Mot. 13, that is their

12  own choice, not an injury attributable to the Executive Order. *See Am. Diabetes Ass'n v. U.S.*

13  *Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (holding that an organization could not

14  establish standing when it "did not divert any resources but was merely going about its business

15  as usual").

16        The plaintiffs also cannot establish standing based on the mere possibility that some

17  future Government action—such as rulemaking action by the FCC, or federal legislation

18  recommended by the Attorney General—conceivably could affect online platforms or could

19  affect the plaintiffs. Perhaps some future action, once completed, could cause an injury that

20  would confer standing. But potential harm from future Government action that has not been

21  completed—and may never be completed—is not the kind of "actual or imminent" harm

22  required to establish standing. In *Coons v. Lew*, 762 F.3d 891 (9th Cir. 2014), for example, a

23  physician challenged the establishment of an administrative board charged with monitoring

24  Medicare spending and making proposals for limiting the growth of Medicare spending. The

25  Ninth Circuit held that the plaintiff's speculation that some future action by the board could

26  affect his interests was not enough to establish standing. *See id.* at 898.

27        The plaintiffs are entitled to disagree with the President's views about the need for future

28  Government action relating to online platforms, but a lawsuit in federal court is not a proper

1   venue for that debate. The plaintiffs' concerns are more appropriately raised through the political

2   process and public rulemaking processes. Indeed, at least two of the plaintiffs have already

3   communicated their views on the petition for rulemaking submitted to the FCC by the NTIA, by

4   submitting comments or calling on their members to do so. *See* Decl. of Jesse Littlewood in

5   Supp. of Pls.' Mot. for Prelim. Inj. ¶ 11, ECF No. 19-2; Decl. of Matthew F. Wood in Supp. of

6   Pls.' Mot. for Prelim. Inj. ¶ 8, ECF No. 19-4.

7           Because the Executive Order does not have any tangible effect on the plaintiffs, they

8   cannot establish standing, and the complaint should be dismissed.

9       **C.    For similar reasons, the plaintiffs' claims fail to satisfy the jurisdictional**
            **requirement of ripeness.**

10          For many of the same reasons, the plaintiffs do not satisfy the requirements of ripeness.

11  As discussed above, the constitutional ripeness requirement overlaps with the "injury-in-fact"

12  requirement of standing. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138

13  (9th Cir. 2000) (en banc); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8

14  (2007). The plaintiffs have not identified any present injury from the Executive Order and

15  therefore fail both the standing and ripeness requirements.

16          The plaintiffs also cannot satisfy the prudential ripeness requirement. Neither the

17  Executive Order itself nor any action that has yet been taken under the order imposes any legal

18  consequences on the plaintiffs, so withholding judicial review would not impose any hardship on

19  the plaintiffs. The plaintiffs also are not challenging any concrete application of the Executive

20  Order, and indeed the Executive Order has no application to the plaintiffs or any other private

21  party. The issues therefore are not fit for judicial decision. *See Nat'l Park Hosp. Ass'n v Dep't of*

22  *the Interior*, 538 U.S. 803, 808–12 (2003) (holding that the plaintiffs' challenge to an agency's

23  general statement of policy was not ripe, in part because the statement did not impose any legal

24  consequences on the plaintiffs); *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–37

25  (1998) (the plaintiff's challenge to a broad plan for management of a national forest was not ripe

26  because even though the plan was a required first step toward approval of future logging, it did

27  not itself authorize logging or otherwise inflict "practical harm" on the plaintiff); *Habeas Corpus*

28

1   *Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241, 1252–54 (9th Cir. 2016) (a proposed challenge

2   to regulations governing the Attorney General's assessments of State programs for providing

3   counsel in postconviction proceedings was not ripe because the regulations governed only

4   actions of the Attorney General and did not immediately affect prisoners' rights); *Alaska Right to*

5   *Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 850–53 (9th Cir. 2007) (a challenge to canons

6   of judicial conduct was not ripe in part because the State Supreme Court had not attempted to

7   apply the canons in any case involving the kind of speech the plaintiffs hoped to solicit from

8   judges).

9          **D.      The reasons that undermine the plaintiffs' claims of immediate injury also**
               **undermine their claims of irreparable harm.**

10

11         The plaintiffs' failure to point to any immediate harm they have suffered from the

12   Executive Order not only prevents them from meeting the requirements of standing but also

13   prevents them from showing the irreparable harm needed to justify a preliminary injunction.

14         Even when a plaintiff can satisfy the requirements of standing, it must make a stronger

15   showing to establish irreparable harm justifying a preliminary injunction. *See, e.g.*, *Caribbean*

16   *Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674–75 (9th Cir. 1988) (noting that speculative

17   injury does not qualify as irreparable harm, and that a plaintiff must produce evidence of

18   irreparable harm and cannot simply rely on allegations); *L.A. Mem'l Coliseum Comm'n v. Nat'l*

19   *Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980) ("Even assuming that these *allegations*

20   might suffice to establish standing, they would not, alone, satisfy the plaintiff's burden of

21   *demonstrating* immediate threatened injury as a prerequisite to preliminary injunctive relief.").

22   As discussed above, the allegations of the complaint do not establish standing, so the plaintiffs

23   also cannot establish irreparable harm.

24         The plaintiffs' unexplained delay in filing suit and seeking relief further undermines any

25   claim of irreparable harm. The President issued his Executive Order on May 28, 2020, and the

26   plaintiffs waited three months to file suit and seek preliminary relief. *See, e.g.*, *Garcia v. Google,*

27   *Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc) (upholding the district court's ruling that the

28   plaintiff's delay in seeking relief "undercut [her] claim of irreparable harm").

E.      **The separation of powers bars injunctive relief against the President.**

Even if there were some basis for permitting suit against the other federal officer defendants, the President should be dismissed as a defendant. The separation of powers generally prevents a federal court from issuing an injunction purporting to supervise the President's performance of his duties. *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867) ("[T]his court has no jurisdiction of a bill to enjoin the President in the performance of his official duties . . . ."); *accord Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) (plurality opinion); *id.* at 826–29 (Scalia, J., concurring in part and concurring in the judgment). The same principles forbid declaratory relief against the President. *See Franklin*, 505 U.S. at 827 (Scalia, J., concurring in part and concurring in the judgment) ("For similar reasons, I think we cannot issue a declaratory judgment against the President."). As Justice Scalia noted in *Franklin*, an action of the President may be challenged "in a suit seeking to enjoin the officers who attempt to enforce the President's directive," but not in a suit against the President himself. *Id.* at 828.

V.      **The complaint also fails to state a claim for relief, which further undermines the plaintiffs' likelihood of success, and the complaint should be dismissed.**

A.      **Because the Executive Order does not regulate speech or any other private activity, the complaint does not state a valid claim under the First Amendment.**

The complaint also fails to state any valid claim for relief, which further undermines the plaintiffs' likelihood of success and makes it necessary to dismiss the complaint.

The plaintiffs' complaint does not state a claim under the First Amendment because the Executive Order does not restrict either speech or the receipt of speech from others. Indeed, the Executive Order does not regulate private activity or private rights in any way. Again, the Executive Order merely directs certain federal agencies to *propose* certain policymaking actions, *study* certain policy questions, and *report* information relevant to those questions. And the explicit aim of all of these directives is to promote free speech: "to foster and protect diverse viewpoints in today's digital communications environment where all Americans can and should have a voice," to "seek transparency and accountability from online platforms, and encourage standards and tools to protect and preserve the integrity and openness of American discourse and

freedom of expression." Exec. Order No. 13,925, § 1. The plaintiffs have not identified, and

cannot identify, any precedent in which a court found that the act of simply proposing or

considering a potential change in law or policy, aimed at promoting free speech, violated First

Amendment rights.

The plaintiffs' claims of retaliation fail for similar reasons—government actions that do

not affect private rights do not amount to unlawful retaliation under the First Amendment. In

*Mulligan v. Nichols*, 835 F.3d 983 (9th Cir. 2016), for example, a plaintiff brought a civil rights

claim against a city, a police union, and two officials of the police union, whom he alleged had

carried out a "smear campaign" against him in retaliation for his exercise of First Amendment

rights. *Id.* at 988. The Ninth Circuit held that the plaintiff did not have a valid claim of First

Amendment retaliation because he had not pointed to "any decision or . . . state action affecting

[his] rights, benefits, relationship or status with the state" or "the loss of a valuable governmental

benefit or privilege." *Id.* at 989. Rather, the court reasoned, the plaintiff essentially complained

that the defendants had "chilled his right to speak freely by engaging in speech of their own that

significantly damaged his reputation and ultimately caused him to lose his job." *Id.* at 988–89.

That, the court held, could not amount to unlawful retaliation under the First Amendment. The

court emphasized that retaliation claims against Government officials for speech-related actions

"warrant a cautious approach" because recognizing such claims risks "interfering with their

ability to effectively perform their duties" and "ignores the competing First Amendment rights of

the officials themselves." *Id.* at 989.

Similarly, in *Blair v. Bethel School District*, 608 F.3d 540 (9th Cir. 2010), the Ninth

Circuit rejected First Amendment claims brought by a school board member who claimed his

fellow board members voted him out as vice president of the board in retaliation for his speech.

The court declined to stretch the concept of First Amendment retaliation in a way that would

include the "regular functioning of the political process." *Id.* at 545. And, as in *Mulligan*, the

court noted that recognizing a retaliation claim would risk hampering the speech rights of public

officials and their ability to exercise political functions. *See Blair*, 608 F.3d at 545–46.

Under *Mulligan* and *Blair*, the Executive Order cannot give rise to any retaliation claim. The Executive Order does not modify any online platform's "rights, benefits, relationship or status with the state," nor does it withdraw any "valuable governmental benefit or privilege." And while the Executive Order directly criticizes the behavior of some online platforms, that criticism does not violate the First Amendment. Government actors—including, and perhaps especially, the President—have a need and a right to participate in public discourse. Speech by Government actors, and consideration of changes in law and policy, are all part of "the political process and public debate," *Blair*, 608 F.3d at 546, not unlawful retaliation. *Cf. Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2246 (2015) ("[A]s a general matter, when the government speaks it is entitled to promote a program, to espouse a policy, or to take a position.").

**B.     The separation of powers bars injunctive relief against the President.**

As discussed above, *see supra* p. 16 (Argument section IV.E), the federal courts lack jurisdiction to issue injunctive or declaratory relief against the President. A complaint seeking injunctive or declaratory relief against the President likewise fails to state a claim for relief.

**C.     Neither the Court's general equitable powers nor the All Writs Act provides any basis for a claim.**

The plaintiffs' complaint also purports to assert claims based on "equity" or the All Writs Act, 28 U.S.C. § 1651. *See* Compl. ¶ 183. But neither the Court's general equitable powers nor the All Writs Act can independently support a claim for relief.

A court's general equitable powers do not permit a court to create a claim that is not otherwise authorized by the Constitution or a statute. *See INS v. Pangilinan*, 486 U.S. 875, 883 (1988); *Armstrong v. Exceptional Child Care Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015).

The All Writs Act is a procedural statute that authorizes courts to issue writs "in aid of" their jurisdiction. 28 U.S.C. § 1651(a). It does not confer any substantive rights or permit courts to create new causes of action. *See Doe v. INS*, 120 F.3d 200, 204–05 (9th Cir. 1997).

Thus, neither "equity" nor the All Writs Act provides a backstop for the plaintiffs' claims. Because they cannot state a claim under the First Amendment, they cannot state a claim at all.

1    **VI.    The other factors in the preliminary injunction analysis weigh against relief.**

2        As discussed above, the plaintiffs cannot establish irreparable harm or a likelihood of

3    success on the merits. They also cannot satisfy the other two factors of the preliminary injunction

4    analysis, which require the plaintiffs to demonstrate that "the balance of equities tilts in [their]

5    favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20

6    (2008). "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556

7    U.S. 418, 435 (2009).

8        As discussed above, the plaintiffs have not shown that they will suffer any irreparable

9    harm in the absence of an injunction. In contrast, an injunction would seriously harm the

10   President and the public interest. The Executive Order is an exercise of the President's authority

11   to supervise Executive Branch officials and agencies, a power that the Constitution confers on

12   the President alone. *Cf. Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2203

13   (2020) (emphasizing that the President's independent supervision of the Executive Branch is

14   fundamental to the constitutional scheme). Judicial interference with the President's

15   constitutional authority would run counter to the public interest, especially when the President's

16   action does not impair any private rights.

17   **VII.    There is no basis for nationwide relief in this action.**

18       For the reasons above, the Court should deny preliminary relief and should dismiss this

19   case. Put simply, this is not a "case or controversy" in which the plaintiffs seek recourse for some

20   concrete, personal injury; it is an abstract political disagreement that lies outside the jurisdiction

21   of the federal courts. But if the Court were to grant any relief, it should be limited to the named

22   plaintiffs.

23       The separation of powers, as embodied in Article III of the Constitution, requires that

24   judicial relief "be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct.

25   1916, 1934 (2018). And under traditional equitable principles, "injunctive relief should be no

26   more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."

27   *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also City & County of San Francisco v.*

28

*Barr*, 965 F.3d 753, 765 (9th Cir. 2020). As Justice Gorsuch has observed, nationwide injunctions raise serious separation of powers concerns, hamper orderly judicial resolution of issues within and across cases, and improperly disadvantage the Government. *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600–01 (2020) (Gorsuch, J., concurring in grant of stay).

The Ninth Circuit has held that, assuming that it can ever be proper for a court to enter a nationwide injunction, a court must make "specific findings" that justify extending relief nationwide. *See City & County of San Francisco*, 965 F.3d at 765 (quoting *City & County of San Francisco v. Sessions*, 349 F Supp. 3d 924, 971 (N.D. Cal. 2018)). The plaintiffs in this case have not articulated reasons why a nationwide injunction would be appropriate in this case. Accordingly, any relief should be limited to the named plaintiffs.

## CONCLUSION

Because the challenged Executive Order does not impose any restriction, requirement, or penalty either on the plaintiffs or on the online platforms they claim to use, the complaint does not meet the jurisdictional requirements of standing and ripeness and does not state a claim under the First Amendment. For the same reasons, the plaintiffs have not shown irreparable harm or a likelihood of success on the merits. Preliminary relief should be denied, and the case should be dismissed.

Date: September 23, 2020                    Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

/s/ JAMES C. LUH
JAMES C. LUH
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave NW
Washington DC 20530
Tel: (202) 514-4938
Fax: (202) 616-8460
E-mail: James.Luh@usdoj.gov

1          Attorneys for Defendants