JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
JAMES C. LUH (N.Y. Bar)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington DC 20530
Tel: (202) 514-4938
E-mail: James.Luh@usdoj.gov
Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

ROCK THE VOTE, et al.

   Plaintiffs

    v.

DONALD J. TRUMP, et al.

   Defendants

)
)
)
)
)
)
)
)
)
)

Case No. 20-cv-6021-WHO

**REPLY MEMORANDUM IN
SUPPORT OF MOTION TO
DISMISS**

Hearing: October 21, 2020, 2 p.m.
Hon. William H. Orrick

1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.      The complaint should be dismissed for lack of subject matter jurisdiction............ 2

          A.      The plaintiffs bear the burden of establishing subject matter jurisdiction.. 2

          B.      The plaintiffs cannot meet the jurisdictional requirement of standing because the Executive Order does not cause any injury to the plaintiffs.... 3

          C.      The complaint also fails the jurisdictional requirement of ripeness. .......... 6

          D.      The separation of powers bars injunctive relief against the President........ 7

    II.     The complaint also fails to state a claim for relief, and the complaint should be dismissed.................................................................................................................. 8

          A.      The plaintiffs do not state a valid First Amendment claim under any of their various theories................................................................................... 8

          B.      Neither the Court's general equitable powers nor the All Writs Act provides any basis for a claim................................................................... 12

CONCLUSION........................................................................................................................ 13

1

# TABLE OF AUTHORITIES

2

**CASES**

3
*Ariz. Right to Life Pol. Action Comm. v. Bayless,*
320 F.3d 1002 (9th Cir. 2003) ................................................................ 3

4

5
*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................ 4

6
*Backpage.com, LLC v. Dart,*
807 F.3d 229 (7th Cir. 2015) .................................................................. 9

7

8
*Bell v. Hood,*
327 U.S. 678 (1946) ........................................................................... 2, 3

9
*Blair v. Bethel Sch. Dist.,*
608 F.3d 540 (9th Cir. 2010) .................................................................. 9

10

11
*Bldg. & Constr. Trades Dep't v. Allbaugh,*
295 F.3d 28 (D.C. Cir. 2002) .......................................................... 10, 11

12
*California ex rel. Becerra v. Sessions,*
284 F. Supp. 3d 1015 (N.D. Cal. 2018) .................................................. 6

13

14
*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ........................................................................... 3, 6

15
*Clinton v. Jones,*
520 U.S. 681 (1997) ................................................................................ 7

16

17
*Johnson v. Stuart,*
702 F.2d 193 (9th Cir. 1983) ................................................................ 12

18
*Klein v. City of San Clemente,*
584 F.3d 1196 (9th Cir. 2009) ................................................................ 8

19

20
*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
624 F.3d 1083 (9th Cir. 2010) ............................................................ 5, 6

21

22
*La Clinica de la Raza v. Trump,*
Case No. 19-cv-04980-PJH, 2020 WL 4569462 (N.D. Cal. Aug. 7, 2020) ........ 2, 3

23
*Laird v. Tatum,*
408 U.S. 1 (1972) .................................................................................... 3

24

25
*Lopez v. Candaele,*
630 F.3d 775 (9th Cir. 2010) .................................................................. 3

26
*Mississippi v. Johnson,*
71 U.S. (4 Wall.) 475 (1867) .................................................................. 7

27

28
*Mulligan v. Nichols,*
835 F.3d 983 (9th Cir. 2016) .................................................................. 9

*Nat'l Treasury Emps. Union v. Bush*,
    891 F.2d 99 (5th Cir. 1989) ................................................................................... 11

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ............................................................................................... 7

*Rubin v. City of Santa Monica*,
    308 F.3d 1008 (9th Cir. 2002) ............................................................................... 5

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) ............................................................................................... 5

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
    968 F.3d 738 (9th Cir. 2020) ................................................................................. 7

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................................... 6, 7

*Thalheimer v. City of San Diego*,
    645 F.3d 1109 (9th Cir. 2011) ............................................................................... 8

*United States v. Salerno*,
    481 U.S. 739 (1987) ............................................................................................. 11

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) ............................................................................................. 12

**FEDERAL STATUTES**

All Writs Act, 28 U.S.C. § 1651 ............................................................................. 12

Communications Decency Act, 47 U.S.C. § 230(c) ................................................ 11

**EXECUTIVE ORDERS**

Exec. Order No. 13,925, 85 Fed. Reg. 34,079 (May 28, 2020) ........................ 1, 2, 10, 11

**OTHER AUTHORITIES**

Donald J. Trump (@realDonaldTrump), Twitter (Sept. 24, 2020, 10:09 PM) ................... 4

Donald J. Trump (@realDonaldTrump), Twitter (Sept. 25, 2020, 7:32 AM) ................... 4

Donald J. Trump (@realDonaldTrump), Twitter (Sept. 28, 2020, 10:21 AM) ................. 4

Donald J. Trump (@realDonaldTrump), Twitter (Oct. 6, 2020, 8:03 AM) ...................... 4

Donald J. Trump (@realDonaldTrump), Twitter (Oct. 7, 2020, 10:26 AM) .................... 4

Donald J. Trump (@realDonaldTrump), Twitter (Oct. 11, 2020, 11:39 AM) ................... 4

**PRELIMINARY STATEMENT**

The plaintiffs' reply memorandum[1] fails to identify any basis for standing in this action and likewise fails to outline any plausible First Amendment violation. For the reasons explained in the defendants' first memorandum,[2] the Court should dismiss this action for lack of subject matter jurisdiction or failure to state a claim.

As discussed in the defendants' first memorandum, the plaintiffs fail to establish that the challenged Executive Order, Exec. Order No. 13,925, 85 Fed. Reg. 34,079 (May 28, 2020), has caused them injury in a way that could satisfy the jurisdictional requirements of standing and ripeness. The Executive Order simply directs Executive Branch officials and agencies to explore certain legal and policy questions and report information relevant to those questions. It does not impose any restriction, requirement, or penalty on any online platform or on the plaintiffs.

The plaintiffs assert that the Executive Order nevertheless injures them by inducing online platforms to refrain from speech, and that impairs the plaintiffs' right to receive speech from online platforms and forces the plaintiffs to divert resources toward increasing their own speech. But no part of that theory holds up under scrutiny: The plaintiffs have not alleged any facts that plausibly suggest that any online platform has actually refrained from speech because of the Executive Order. The Ninth Circuit has held that injury associated with reduced availability of speech is a "generalized grievance" that cannot support standing. And the plaintiffs have not shown that they would face some other material injury if they do not divert their resources.

The plaintiffs also cannot establish any violation of First Amendment rights. The plaintiffs do not operate online platforms, and they cannot bring any claim based on the First Amendment rights of online platforms—whether based on direct restriction of speech, retaliation for protected speech, or threatened retaliation—because they concede that they cannot meet the requirements of third-party standing. In any event, the Executive Order does not restrict speech,

---

[1] Pls.' Reply in Supp. of Mot. for Prelim. Inj. and Opp'n to Defs.' Mot. to Dismiss (Pls.' Reply and Opp'n), ECF No. 32.

[2] Notice of Mot. and Mot. to Dismiss and Opp'n to Mot. for Prelim. Inj. (Defs.' Mot. and Opp'n), ECF No. 31.

1   nor does it take any action of a kind that could qualify as a retaliation or threatened retaliation in

2   violation of the First Amendment. By its plain terms, the Executive Order seeks to uphold "the

3   ideals of the First Amendment to modern communications technology" in order to "foster and

4   protect diverse viewpoints in today's digital communications environment where all Americans

5   can and should have a voice." Exec. Order No. 13,925 § 1.

6        The plaintiffs also fail to state any claim based on a right to receive communications from

7   online platforms. Courts have recognized claims based on a right to receive speech only in

8   situations involving some discernible interference with receipt of communications. The plaintiffs

9   have not cited any binding precedent finding that a general reduction in speech implicated the

10   First Amendment rights of persons who wished to receive speech. Moreover, the plaintiffs have

11   not alleged facts that plausibly suggest that any online platform has in fact reduced its speech

12   because of the Executive Order.

13        The Court should dismiss this action.

14   **ARGUMENT**

15   **I.    The complaint should be dismissed for lack of subject matter jurisdiction.**

16        **A.    The plaintiffs bear the burden of establishing subject matter jurisdiction.**

17        As discussed in the defendants' first memorandum, Supreme Court precedent clearly

18   establishes that the plaintiffs bear the burden of establishing subject matter jurisdiction. *See*

19   Defs.' Mot. and Opp'n 7. At the pleading stage, the plaintiffs must allege facts that, if proved,

20   would meet the applicable constitutional and statutory requirements for subject matter

21   jurisdiction.

22        The plaintiffs quote language from *La Clinica de la Raza v. Trump*, Case No.

23   19-cv-04980-PJH, 2020 WL 4569462 (N.D. Cal. Aug. 7, 2020), saying that "jurisdictional

24   dismissals in cases premised on federal-question jurisdiction are exceptional." Pls.' Reply and

25   Opp'n 25 (quoting *id.* at *2). This language does not mean that courts should hesitate to dismiss

26   federal claims for lack of jurisdiction. *La Clinica de la Raza* was referring to the principle,

27   explained in *Bell v. Hood*, 327 U.S. 678 (1946), that if a court concludes that it has jurisdiction

28   but then determines that the plaintiff does not have a valid claim under federal law, the court

1   should reject the claim on the merits, not for lack of jurisdiction. *See La Clinica de la Raza*, 2020

2   WL 4569462 at \*2; *Bell*, 327 U.S. at 682 ("If the court does later exercise its jurisdiction to

3   determine that the allegations in the complaint do not state a ground for relief, then dismissal of

4   the case would be on the merits, not for want of jurisdiction."). That principle is not relevant to

5   the present motion, since the defendants have not raised any dispute about statutory jurisdiction.

### B.   The plaintiffs cannot meet the jurisdictional requirement of standing because the Executive Order does not cause any injury to the plaintiffs.

7          As explained in the defendants' first memorandum, the plaintiffs' complaint fails to meet

8   the jurisdictional requirement of standing, because the Executive Order does not directly regulate

9   the plaintiffs or the online platforms they use, nor does it otherwise cause any concrete and

10  particularized injury to the plaintiffs' interests.

11         The plaintiffs point to Ninth Circuit cases stating that invasions of First Amendment

12  rights "tilt dramatically toward a finding of standing," Pls.' Reply and Opp'n 3 (quoting *Lopez v.*

13  *Candaele*, 630 F.3d 775, 781 (9th Cir. 2010), and *Ariz. Right to Life Pol. Action Comm. v.*

14  *Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)). But those cases did not hold that a plaintiff

15  asserting First Amendment claims is excused from the requirement of standing, or faces a

16  relaxed standing requirement. On the contrary, the court in each of those cases duly analyzed

17  whether the plaintiffs met the traditional requirements of standing—injury, causation, and

18  redressability. *See Lopez*, 630 F.3d at 788–94; *Ariz. Right to Life Pol. Action Comm.*, 320 F.3d at

19  1006–07 & n.5. And the Ninth Circuit and the Supreme Court have not hesitated to dismiss cases

20  in which the plaintiffs sought to bring First Amendment claims but lacked standing, including the

21  *Lopez* case cited by the plaintiffs. *See, e.g.*, *Lopez*, 630 F.3d at 794; *Laird v. Tatum*, 408 U.S. 1,

22  15 (1972), *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013).

23         The plaintiffs assert that the Executive Order injures them because it induces online

24  platforms to refrain from speech, which impairs the plaintiffs' right to receive speech from online

25  platforms and forces the plaintiffs to divert resources toward increasing their own speech. But no

26  part of this theory holds up under scrutiny.

First, the plaintiffs do not allege facts suggesting that any online platform has actually curtailed its speech because of the Executive Order. The plaintiffs' complaint and motion for preliminary injunction focus primarily on Twitter as a platform supposedly silenced by the Executive Order. But the plaintiffs themselves identified two occasions after the Executive Order when Twitter attached editorial labels to tweets by the President signaling some degree of disapproval with the tweets. The defendants identified six additional occasions that had not been mentioned in the complaint. And since the filing of the defendants' first memorandum, Twitter has attached disapproving labels to at least six more tweets by the President.[3] That is at least fourteen occasions in all since the Executive Order was issued—hardly consistent with a claim that Twitter has been cowed into silence.

To this, the plaintiffs' only response is that "Twitter has not fact-checked other false statements" by the President. Pls.' Reply and Opp'n 7 n.2. But the fact that Twitter has not labeled every tweet the plaintiffs would have liked, or has not done so in exactly the manner the plaintiffs would have liked, does not suggest that Twitter has been silenced by the Executive Order. A far more plausible explanation is that Twitter—assuming that it even reviewed the tweets that the plaintiffs find objectionable—simply did not reach the same judgments the plaintiffs reached about whether and how the President's tweets should be labeled. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (noting that factual allegations do not support a claim when there is an "obvious alternative explanation" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007))). In addition, the plaintiffs cannot show that a ruling in their favor would induce

---

[3] Donald J. Trump (@realDonaldTrump), Twitter (Sept. 24, 2020, 10:09 PM), https://twitter.com/realDonaldTrump/status/1309314144663986182; Donald J. Trump (@realDonaldTrump), Twitter (Sept. 25, 2020, 7:32 AM), https://twitter.com/realDonaldTrump/status/1309455713882828802; Donald J. Trump (@realDonaldTrump), Twitter (Sept. 28, 2020, 10:21 AM), https://twitter.com/realDonaldTrump/status/1310585397630689280; Donald J. Trump (@realDonaldTrump), Twitter (Oct. 6, 2020, 8:03 AM), https://twitter.com /realDonaldTrump/status/1313449844413992961; Donald J. Trump (@realDonaldTrump), Twitter (Oct. 7, 2020, 10:26 AM), https://twitter.com/realDonaldTrump/status /1313848232716521473; Donald J. Trump (@realDonaldTrump), Twitter (Oct. 11, 2020, 11:39 AM), https://twitter.com/realDonaldTrump/status/1315316071243476997.

Twitter or other online platforms to *increase* their speech, which they would need to show to meet the redressability requirement of standing.

A further fatal problem with the plaintiffs' theory is that even if online platforms had actually reduced their speech, that reduction would not qualify as an injury that could support standing. As discussed in the defendants' first memorandum, the Ninth Circuit held in *Rubin v. City of Santa Monica*, 308 F.3d 1008 (9th Cir. 2002), that a general reduction in the availability of desired speech was not an injury to any personal right to receive speech. Rather, it was the kind of "generalized grievance" that cannot support standing. *Id.* at 1020. The plaintiffs argue that this case differs from *Rubin* because they are suing "not as members of the public but as organizations with specific missions implicated by the Order." Pls.' Reply and Opp'n 8. But a plaintiff's devotion to a cause or mission does not transform a generalized grievance into a personal injury. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 226 (1974) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient . . . ." (quoting *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972))).

The plaintiffs also cite other cases in which courts found standing based on impairment of interests in receiving information. *See* Pls.' Reply and Opp'n 6. But those cases involved government action that either impeded access to information or interfered with particular communications. That is fundamentally different from a case like *Rubin* or this case, where the plaintiffs claim that they were harmed because the desired speech was never created. If a reader could not buy a copy of *Ulysses* because the government had prohibited its sale, that would be a personal harm. But if, instead, *Ulysses* were unavailable because it had never been written, that would not be a personal harm; it would be a generalized grievance, a loss to the public at large.

The plaintiffs also cannot establish standing based on their allegations that they have diverted resources in response to the Executive Order, *see, e.g.*, Pls.' Reply and Opp'n 4–6. As the Ninth Circuit explained in *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010), an organization seeking to establish standing based on a diversion of resources "must . . . show that it would have suffered some other injury if it had not

Reply Memorandum in Support of Motion to Dismiss
Case No. 20-cv-6021-WHO                    5

diverted resources to counteracting the problem." *Id.* at 1088. Without such a showing, the harm is the result of the plaintiffs' own choices and cannot be attributed to the challenged government action. The plaintiffs have not explained how they would have suffered any material injury if they had not shifted their resources as they claim to have done. They do not even acknowledge the requirement described in *La Asociacion de Trabajadores*. Moreover, an organization cannot establish standing based on actions it takes "in response to a speculative threat." *Clapper*, 568 U.S. at 416. As discussed above, the plaintiffs have not shown that any online platform has actually reduced its speech because of the Executive Order.

The plaintiffs also cannot bring claims based on the First Amendment rights of online platforms, rather than their own rights. As explained in the defendants' first memorandum, a plaintiff seeking to assert the rights of third parties must show that it meets the minimum constitutional requirements of standing—injury, causation, and redressability—and must further show that it has a special relationship with the third parties and that the third parties are hindered from bringing suit themselves. *See* Defs.' Mot. and Opp'n 12. The plaintiffs have not met the minimum requirements of standing, and they have not even attempted to argue that they meet the additional requirements of third-party standing. *See* Pls.' Reply in Supp. of Mot. for Prelim. Inj. and Opp'n to Defs.' Mot. to Dismiss (Pls.' Reply and Opp'n) 2 n.1, ECF No. 32.

**C.      The complaint also fails the jurisdictional requirement of ripeness.**

The complaint fails the requirements of ripeness for many of the same reasons—the plaintiffs have not articulated any present or imminent injury from the Executive Order. As explained in the defendants' first memorandum, the plaintiffs do not meet either the constitutional ripeness requirement or the prudential ripeness requirement. *See* Defs.' Mot. and Opp'n 14–15.

The plaintiffs argue that a court may disregard the prudential ripeness requirement, citing a decision by this Court in *California ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018), which in turn cited the Supreme Court's decision in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). *See* Pls.' Reply and Opp'n 10 (citing *California*, 284 F. Supp. 3d at 1031). But the plaintiffs' argument misinterprets the Supreme Court's decision in *Susan B.*

Reply Memorandum in Support of Motion to Dismiss
Case No. 20-cv-6021-WHO                                6

*Anthony List.* The Court did not abrogate the prudential ripeness requirement; rather, the Court found that the case met the requirements of prudential ripeness, and so there was no need for the Court to consider whether it should repudiate the requirement. *See Susan B. Anthony List*, 573 U.S. at 167 ("[W]e need not resolve the continuing vitality of the prudential ripeness doctrine in this case because the 'fitness' and 'hardship' factors are easily satisfied here."). Consequently, prudential ripeness is still a mandatory jurisdictional requirement under Ninth Circuit law. *See Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 751 n.9 (9th Cir. 2020).

The plaintiffs' failure to meet the requirements of standing and ripeness is made even more plain by their assertion that preliminary relief on anything less than a nationwide scale would not be adequate to protect their interests. *See* Pls.' Reply and Opp'n 25–26. If the Executive Order truly caused the plaintiffs some particularized injury, they should be able to articulate a narrower request for relief. But the plaintiffs' suit is not a "case or controversy" focused on an injury to the plaintiffs; it is an abstract political disagreement that is not for the courts to resolve.

### D.   The separation of powers bars injunctive relief against the President.

As explained in the defendants' first memorandum, the separation of powers generally prevents a federal court from issuing an injunction purporting to supervise the President's performance of his duties.

Neither *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), nor *Clinton v. Jones*, 520 U.S. 681 (1997), approved of judicial orders purporting to control the President's exercise of his official duties. And the plaintiffs are mistaken when they assert that such orders are permissible in cases that entail constitutional claims. In *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475 (1867), Mississippi asked the Supreme Court to block the President from enforcing the Reconstruction Acts, which Mississippi asserted were unconstitutional. *See id.* at 497–98. The Court held that the presence of a constitutional claim was no reason to set aside the "general principles which forbid judicial interference with the exercise of Executive discretion," *id.* at 499, and refused to entertain the suit, *see id.* at 501.

1

2

**II.      The complaint also fails to state a claim for relief, and the complaint should be dismissed.**

3

**A.      The plaintiffs do not state a valid First Amendment claim under any of their various theories.**

4

5          Because the complaint does not meet the requirements of standing and ripeness, the Court

6   should dismiss the case without reaching the merits. But the plaintiffs' complaint also fails to

    state a claim for relief under the First Amendment.

7          The plaintiffs assert that the defendants bear the burden of showing that the Executive

8   Order does not violate the First Amendment, *see* Pls.' Reply and Opp'n 11, but the cases they cite

9   say the opposite: a plaintiff "bears the initial burden of making a colorable claim that its First

10  Amendment rights have been infringed, or are threatened with infringement." *Thalheimer v. City*

11  *of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011); *see also Klein v. City of San Clemente*, 584

12  F.3d 1196, 1200–01 (9th Cir. 2009) (noting that the parties agreed that the challenged ordinance

13  imposed a restriction on speech, and explaining that the plaintiff "has the general burden of

14  establishing the elements necessary to obtain injunctive relief").

15         The plaintiffs take the Government to task for supposedly failing to accord separate

16  treatment to each of the plaintiffs' various theories—that the Executive Order amounts to a

17  restriction of speech, unlawful retaliation, a threat of retaliation, or interference with the right to

18  receive speech. But this is not a consequential objection, because all the plaintiffs' various

19  theories fail for the same simple reasons—the Executive Order plainly does not restrict speech,

20  and it also does not take or threaten to take any action that could amount to unlawful retaliation.

21  Indeed, the fact that the plaintiffs could not settle on one theory only serves to highlight the

22  weakness of their claims.

23         It bears emphasis again that the plaintiffs have conceded that they do not meet the

24  requirements for third-party standing. Thus, even if they could meet the minimum constitutional

25  requirements of standing, they could not prevail on any claim based on the speech rights of

26  online platforms, whether it alleges an unlawful restriction of speech, retaliation, or a threat of

27  retaliation. The only claim that would not fail for this reason is the plaintiffs' claim of

28

Reply Memorandum in Support of Motion to Dismiss
Case No. 20-cv-6021-WHO                              8

interference with a "right to receive" speech, which is invalid for other reasons, as discussed below, *see infra* p. 12.

The Executive Order does not impose any restriction on speech, and certainly does not impose any content-based restriction. The plaintiffs say that the Executive Order "plainly" restricts speech, *see* Pls.' Reply and Opp'n 17–18, but they do not identify any provision in the Executive Order that regulates private rights or private conduct. There is none.

The Executive Order also does not retaliate or threaten retaliation against protected speech. As discussed in the defendants' first memorandum, the Executive Order does not modify any online platform's "rights, benefits, relationship or status with the state," nor does it withdraw any "valuable governmental benefit or privilege," *Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016). The ordinary functioning of "the political process and public debate" cannot support a retaliation claim. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 546 (9th Cir. 2010). And logically, a plaintiff cannot show an unlawful "threat" of retaliation if the "threatened" action, once completed, would not amount to unlawful retaliation.

The plaintiffs rely heavily on the Seventh Circuit's decision in *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015). *See* Pls.' Reply and Opp'n 12, 15. That case is not binding on this Court, and it involved vastly different facts. In *Backpage*, the defendant sheriff wrote letters to Visa and Mastercard requesting that they stop allowing their credit cards to be used to purchase advertising "on websites like Backpage.com" and suggesting the companies would face legal jeopardy if they continued to serve Backpage. *Backpage.com*, 807 F.3d at 231–32. The letter further asked Visa and Mastercard to identify contacts that the sheriff could "work with [harass, pester] on this issue." *Id.* at 232 (alteration in original). Visa and Mastercard both cut off services to Backpage within days. *Id.* The Seventh Circuit found that the letter, "containing legal threats and demands for quick action and insisting that an employee of the recipient be designated" to communicate with the sheriff, amounted to "government coercion aimed at shutting up or shutting down Backpage's adult section." *Id.* at 233.

The Executive Order here is nothing like the sheriff's letter in *Backpage.* The sheriff in *Backpage* directed threats to specific companies—Visa and Mastercard—and threatened law

1   enforcement action against them in particular, and it singled out Backpage as the primary

2   offender. The Executive Order, on the other hand, does not single out any particular online

3   platform for unfavorable treatment, nor does it threaten individual sanctions against any

4   particular person. Instead, the Executive Order directs federal agencies to explore certain policy

5   questions and, where necessary, propose policy changes that would apply to online platforms

6   generally. It does so with the explicit aim of promoting and protecting free speech online. Exec.

7   Order No. 13,925 § 1 (explaining that the Order is intended to "foster and protect diverse

8   viewpoints in today's digital communications environment where all Americans can and should

9   have a voice"). And it specifically instructs federal agencies to execute its requirements within

10  the bounds of the law, which necessarily includes the First Amendment. *See id.* § 8(b) ("This

11  order shall be implemented consistent with applicable law . . . ."). The plaintiffs have not

12  identified any case suggesting that merely proposing or considering changes to generally

13  applicable laws or policies can amount to retaliation or coercion prohibited by the First

14  Amendment.

15      The plaintiffs argue that section 3 of the Executive Order, which directs the Department

16  of Justice to review federal advertising and marketing expenditures and "assess whether any

17  online platforms are problematic vehicles for government speech due to viewpoint

18  discrimination, deception to consumers, or other bad practices," Exec. Order No. 13,925 § 3,

19  could potentially lead to unlawful retaliation against individual online platforms based on their

20  speech. But it would be improper to assume that the Department of Justice will implement

21  section 3 in an unlawful manner.

22      The Courts of Appeals of both the D.C. Circuit and the Fifth Circuit have rejected

23  attempts to challenge Executive Orders based on a mere possibility that they could be

24  implemented in a questionable manner. In *Building and Construction Trades Department v.*

25  *Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002), labor unions and a city government sought an injunction

26  against an Executive Order concerning federal and federally funded construction contracts,

27  contending in part that the Executive Order could be implemented in a manner that conflicted

28  with federal statutes. *See id.* at 30–31. The court held that a "mere possibility" that the Executive

Order could be implemented in an unlawful manner could not "justify an injunction against enforcement of a policy that, so far as the present record reveals, is above suspicion in the ordinary course of administration." *Id.* at 33. The court noted that the Executive Order specified that it applied "[t]o the extent permitted by law" and that the order was facially valid, meaning that it was possible that it could be implemented in a lawful manner. *Id.* (alteration in original) (noting that, to prevail in a facial challenge against a regulation, the plaintiff must "establish that no set of circumstances exists under which the [regulation] would be valid" (alteration in original) (quoting *Reno v. Flores*, 507 U.S. 292, 301 (1993))); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987). Similarly, in *National Treasury Employees Union v. Bush*, 891 F.2d 99 (5th Cir. 1989), a union sought to challenge an Executive Order authorizing employee drug testing. *Id.* at 100. The Fifth Circuit found that "because not every application of the Order would be invalid, . . . [a]ny challenges to its implementation must be launched against the individual agency plans promulgated under it." *Id.* at 101. These cases weigh against the plaintiffs' claims in this case, since the Executive Order challenged in this case specifies that it "shall be implemented consistent with applicable law," Exec. Order No. 13,925 § 8(b), and section 3 of the Executive Order can certainly be implemented lawfully.

The same is true with respect to the rulemaking proceeding the National Telecommunications and Information Administration (NTIA) has asked the Federal Communications Commission (FCC) to undertake concerning section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230,[4] as well as the other initiatives contemplated by the Executive Order—there is no reason to expect that any of them will

---

[4] The plaintiffs are mistaken when they state that the Executive Order is being "implemented" in part "through an FCC rulemaking already initiated by the Department of Commerce." Pls.' Reply and Opp'n 1. The NTIA, which is part of the Department of Commerce, has submitted a *petition* for rulemaking with the FCC. *See* Defs.' Mot. and Opp'n 4. It is up to the FCC to decide whether to initiate rulemaking based on the petition; the Department of Commerce does not have authority to require the FCC to initiate rulemaking. So far, the FCC has accepted public comments on the NTIA petition but has not yet acted on it.

The Executive Order does not dictate to the FCC how it should act on the petition or what result it should reach if it chooses to conduct a rulemaking. Thus, the plaintiffs are also mistaken when they say that the order "mandates" an FCC rulemaking, Pls.' Reply and Opp'n 5, or that an FCC rulemaking would be "initiated pursuant to the Order," Pls.' Reply and Opp'n 14.

1   culminate in any kind of unlawful action. If that did happen, an injured party could bring an

2   appropriate court challenge at that time. But the mere theoretical possibility that some future

3   action taken under the Executive Order could run afoul of the law is no reason to enjoin the

4   entire order.

5           The plaintiffs also do not allege facts that could support a First Amendment claim for

6   interference with a right to receive speech. Prior cases recognizing a First Amendment right to

7   receive information have involved some tangible government interference with a communication

8   from a speaker to a listener. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,*

9   *Inc.*, 425 U.S. 748, 756 (1976) ("[W]here a speaker exists, . . . the protection afforded is to the

10  communication, to its source and to its recipients both."); *see also Johnson v. Stuart*, 702 F.2d

11  193, 195 (9th Cir. 1983). In this case, the plaintiffs do not assert that the government blocked any

12  communication from an online platform or prohibited online platforms from speaking; instead,

13  they claim that online platforms have reduced the quantity of their speech. The plaintiffs have

14  not cited any binding precedent in which a court found that this kind of reduction in the quantity

15  of desired speech impaired any person's First Amendment right to receive speech. Moreover, as

16  discussed above, the plaintiffs have not alleged facts plausibly suggesting that any online

17  platform has actually reduced its speech because of the Executive Order. Thus, there is no

18  "willing speaker" whose speech has been blocked, *Va. State Bd. of Pharmacy*, 425 U.S. at 756.

19          **B.      Neither the Court's general equitable powers nor the All Writs Act provides
                      any basis for a claim.**

20

21          As explained in the defendants' first memorandum, there is no basis for a separate claim

22  based on the Court's general equitable powers or the All Writs Act, 28 U.S.C. § 1651. The

23  plaintiffs have not refuted the defendants' arguments, but the dispute is largely academic,

24  because the plaintiffs appear to concede that they cannot obtain relief without proving

25  "underlying constitutional violations that are independently actionable," Pls.' Reply and Opp'n

26  26. In other words, the plaintiffs agree that dismissal of the plaintiffs' First Amendment claims

27  would put an end to the entire action.

28

**CONCLUSION**

Because the challenged Executive Order does not impose any restriction, requirement, or penalty either on the plaintiffs or on the online platforms they claim to use, the complaint does not meet the jurisdictional requirements of standing and ripeness and does not state a claim under the First Amendment. The Court should dismiss this case.

Date: October 14, 2020                              Respectfully submitted,

                                                    JEFFREY BOSSERT CLARK
                                                    Acting Assistant Attorney General

                                                    LESLEY FARBY
                                                    Assistant Branch Director

                                                    /s/ JAMES C. LUH
                                                    JAMES C. LUH
                                                    Senior Trial Counsel
                                                    United States Department of Justice
                                                    Civil Division, Federal Programs Branch
                                                    20 Massachusetts Ave NW
                                                    Washington DC 20530
                                                    Tel: (202) 514-4938
                                                    Fax: (202) 616-8460
                                                    E-mail: James.Luh@usdoj.gov
                                                    Attorneys for Defendants